Curtis **PENNINGTON,**
**# 286304 Plaintiff,**

v.

**C/O L. TAYLOR, Defendant.**

**No. 2:02–CV–604.**

United States District Court,
E.D. Virginia,
Norfolk Division.

March 1, 2004.

Curtis Pennington, Dillwyn, VA, pro se.

Mark R. Davis, Office of the Attorney General, Richmond, VA, for Defendant.

## ORDER AND OPINION

FRIEDMAN, District Judge.

The plaintiff, a Virginia inmate, has submitted a *pro se* complaint, pursuant to 42 U.S.C. § 1983, to redress alleged violations of his constitutional rights. The plaintiff alleges that the defendant showed deliberate indifference to the risk of harm posed by his assignment to a top bunk in light of certain medical conditions. The defendant, C/O L. Taylor, a Correctional Officer at the Mecklenburg Correctional Center, has filed a motion for summary judgment, which is ripe for review. Based on the briefs submitted by the parties and for the reasons set forth below, the motion for summary judgment is GRANTED.

### I. Factual and Procedural Background

The facts presented are as alleged by the plaintiff and supplemented by evidence submitted by the defendant via affidavit. During the occurrence of the events that form the basis for his complaint, Virginia Department of Corrections inmate Curtis Pennington was incarcerated in the Mecklenburg Correctional Center. He is in his late 50s and claims he has a documented medical history of depression, diabetes, seizures, and a back injury, among other

problems. The plaintiff was apparently incarcerated at Mecklenburg beginning in October, 2000. *See* "Table of Explanation," docket no. 3, at 2 (hereinafter "Table"). He claims he was initially assigned to a lower bunk in Building 1. *Id.* He was eventually transferred to two more buildings, and states that with each transfer, he was assigned to a lower bunk. *Id.* He maintains that his assignment to a lower bunk was based initially on the intake officer's determination that owing to the plaintiff's age and ailments he should get such a bunk. *Id.* He alleges that inmates of his age, with his "illness" are assigned to lower bunks, if available. *Id.* If none are available, they are assigned to top bunks until a lower bunk opens up. *Id.*

Initial bunk assignments are premised on availability and compatibility in the absence of recommendations from medical or security. *See* Def's Ex. II (J.J. Davis Aff.). This decision is apparently made by members of the records department. *Id.* Nothing in the plaintiff's record from his initial arrival to the day of his accident officially indicated he required a lower bunk. *Id.* The plaintiff has offered no evidence to contradict this assertion.

Ultimately, for reasons that are unclear, he requested a transfer to the medical unit of Building 4. The exact nature of the medical unit is not clear from the record. He claims that he was told a transfer would not occur until a lower bunk opened up. When that did occur, he was transferred, on October 10, 2001. Upon arrival, he claims he discovered that the inmate who had occupied the top bunk had moved into the lower bunk, which was supposedly his assigned bunk. Table at 3. When the

defendant informed him that he was to take the top bunk, he told her that he was concerned for his health and safety due to his various medical issues. Pl's. Compl., part IV, at 2. He claims he asked her to contact the medical department or the officer in charge of that building.[1] *Id.*

While the plaintiff claims his medical records indicate a lower bunk was necessary, he did not initially allege that he ever received any recommendation from medical personnel that a lower bunk assignment was required and no evidence supports this fact. Instead, he seems to have asserted that simply viewing his medical record with its documentation of his ailments would provide enough information to allow a corrections officer to ascertain that he required a lower bunk. He further argues that his appearance alone would have indicated that he needed a lower bunk. "Motion to Explain," docket no. 36, at 2. In his reply brief to the motion for summary judgment, however, he does seem to state that he had a "medical slip for a bottom bunk," although this is not clear either. Pl's. Br. Opp'n Mot. Summ. J. at 5 ("Pl's.Br.").

Having told the defendant of his concerns, he alleges that she stated she did not have time for him and that he should speak to his counselor about getting a different bunk. *See* Compl., part IV, at 1. He also states that she told him he needed to get "something in writing" from "medical" in order to have his bunk assignment changed. Table at 3. Pennington claims he did inform his counselor of the problem and that he waited for a resolution of this matter. He does not allege that he made

---

**1.** The record is unclear whether he even asked the defendant to move him to a lower bunk. In a "Motion to Explain," the plaintiff states that "there is no where [sic] in Mr. Pennington's grievance or statements made in documents that shows Mr. Pennington told c/o L. Taylor to give him a bottom bunk." "Motion to Explain," docket no. 36, at 2. He then explains that Taylor should have known he required a bottom bunk by the mere sight of him.

any attempt to change his bunk assignment by directly obtaining a recommendation from "medical."

Forty-eight days after being assigned to the top bunk, on November 28, 2001, he fell out of the bunk to the floor and injured himself. Compl., Part IV, at 1. His complaint accuses the defendant of displaying deliberate indifference to his medical condition in that she knew his placement in a top bunk posed a substantial risk of serious harm given his medical conditions and she failed to remedy the problem. *Id.* at 2. Pennington also sued various institutional defendants in addition to Taylor, but those parties have been dismissed.

## II. Standard of Review

Summary judgment is appropriate when it is apparent from the entire record, viewed in the light most favorable to the non-moving party, that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P 56(c); *Clark v. Alexander,* 85 F.3d 146, 150 (4th Cir. 1996); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court may deny summary judgment when there is sufficient evidence favoring the nonmoving party that would allow a reasonable jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A properly supported motion for summary judgment, however, may not be defeated by "the mere existence of some alleged factual dispute between the parties." *Id.* at 247–48, 106 S.Ct. 2505.

Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "A scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 244, 106 S.Ct. 2505. Accordingly, the court must grant summary judgment where "the evidence is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505; *see also Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1120 (4th Cir.1995) (quoting *Anderson* ).

In the instant case, the defendant's motion was accompanied by sworn affidavits and supporting documentary evidence. When a motion for summary judgment is made and supported in this manner, the "adverse party may not rest upon the mere allegations or denials" of his pleading, but must respond with affidavits or some other proper evidence, and "set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Local Rule 56 provides that a response to a motion for summary judgment must set forth the specific facts that the non-movant believes are in dispute, with support from the record. The court may assume facts not so controverted are admitted.

## III. Analysis

The plaintiff alleges that the defendant is liable for the failure to adequately respond to his claim that he had medical conditions that put him at risk due to his assignment to a top bunk. Deliberate indifference to an inmate's medical needs and the risk of harm that it presents in certain contexts creates a cause of action under 42 U.S.C. § 1983 for cruel and unusual punishment under the Eighth Amendment. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The

proper standard in assessing deliberate indifference is recklessness: that a prison official knew an inmate faced a substantial risk of serious harm and disregarded that risk. *See Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. Thus, there must be knowledge of the risk and a failure to act to mitigate that risk.

■ In the instant case, the defendant did not "know" of a substantial risk of serious harm. She simply had the plaintiff's representations as to his medical condition. The court finds this factual context different from the more common instances where the risk is actually known because a prison official need not accept an inmate's bare assertion on this point. *See Aswegan v. Henry,* 49 F.3d 461 (8th Cir.1995). Simply because the plaintiff claims a risk exists does not make it so. However, a duty may arise in certain contexts to inquire further into such a claim. The Supreme Court has stated that a defendant will not escape liability "if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to exist ...." *Farmer,* 511 U.S. at 843 n. 8, 114 S.Ct. 1970. In the present case, the defendant is accused of just that: failing to contact medical as requested to verify his condition, or alternatively to verify whether he had a "medical slip" requiring a bottom bunk, and then providing him with a bottom bunk.

The record indicates the defendant could not have "strongly suspected" the alleged facts to be true based on the information before her. More importantly, it seems to the court that the defendant had no duty to confirm the plaintiff's claim. By affidavit, the defendant has stated that she has no authority over bed assignments, that this is done by the records department. *See* Def's. Ex. I. She also stated that special assignments to lower bunks are done through a doctor's request. *Id.* The records department has stated by affidavit that at no time prior to the accident did the plaintiff have authorization for a special assignment to a bottom bunk. *See* Def's. Ex. II. Even if this conclusion is incorrect, the defendant was entitled to rely on the representations of the administrative body charged with bunk assignments that the plaintiff did not require a lower bunk.[2]

The defendant had no reason to believe there was an error with the bunk assignment, nor does it appear there was such an error. The plaintiff offered nothing to the defendant to indicate that he required a lower bunk assignment other than his own representations. A prison official need not base a bunk assignment merely on an inmate's say-so. *See, e.g., Puente v. Malone,* 2001 WL 1512543, *5 (N.D.Ill.2001) (unpublished) (holding similarly in the context of cell assignments). The mere fact that he received a lower bunk assignment in prior buildings does not mean he had a right to one upon transfer to the defen-

---

**2.** It does not appear that there was any such medical authorization. The plaintiff apparently has no direct knowledge of his medical records. Nor has he ever indicated that he ever obtained formal authorization for a bottom bunk assignment or that he ever sought one from a prison doctor. Perhaps he assumes he had such a right because he had previously received a bottom bunk, but this possibility is irrelevant in gauging the defendant's knowledge of whether the plaintiff needed a lower bunk and her response to this need. The plaintiff has offered no evidence that any such documentation existed, and the court does not believe he has even seen his medical file. The plaintiff has made numerous requests of the court for an order allowing him to copy documents in his record without charge, which the court has denied. The content of these requests indicate the plaintiff has never bothered to view his medical record, which he had an unfettered right to do.

dant's pod. Clearly, the defendant was entitled to rely on the fact that nothing from the records department was forthcoming which indicated the plaintiff required a lower bunk. *Cf. Antenucci v. Vincent*, 2003 WL 288967, *6 (S.D.Iowa 2003) (unpublished) (stating prison official could properly assume supervisor had verified inmate's acceptable physical condition without attempting independent confirmation). Of course, even if the plaintiff had no formal medical representation that he needed a bottom bunk, the defendant may still have been reckless in failing to act in some form if the facts suggested she otherwise knew of the risk presented by assigning him a bottom bunk. The plaintiff argues that his mere appearance or the content of his medical records would have indicated as much.

Although, as noted, the plaintiff claims his physical appearance alone would have been enough for the defendant to know that he required a lower bunk, the court cannot agree. The plaintiff alleges he fell out of bed due to a seizure. A corrections officer would have no way of knowing that a prisoner was suffering from such a condition from his appearance, let alone the degree of that condition. It is not relevant that the plaintiff had other characteristics, like his age, that may have merited a bottom bunk, as these did not cause the injury at issue. Since that time, he has had a medically-authorized bottom bunk assignment.

Additionally, he claims that the defendant should have known he required a bottom bunk simply because he was transferring into a medical unit. *See* "Motion to Explain," at 2. He seems to argue that anyone assigned to this unit of Building 4 required a bottom bunk. This argument cannot stand in the face of the simple fact that if it were true, there would be no bunks at all in the medical unit, only beds.

Obviously, because there were bunks in this unit, some inmates, specifically those in top bunks, did not require bottom bunks.

■ The second element of a deliberate indifference claim like the plaintiff's is gauging the prison official's response, if any, to an apparent risk. This must be analyzed in context. In the present case, the defendant was not "indifferent" to the plaintiff's claim that his safety may be jeopardized by being placed in a top bunk. Rather, she informed the plaintiff of the steps he needed to take to change his assignment. Assuming the plaintiff's factual allegations are true, the defendant told him (1) he needed medical documentation before she would change his bunk assignment, and (2) he should see his counselor about changing his bunk assignment. *See* Pl's Compl., Part IV, at 1; Table at 3.

A number of facts render the defendant's action something less than reckless. First, there was little immediate indication that the plaintiff was at risk. Second, she properly assumed there was no special permission given by medical personnel for a bottom bunk and that this lack of permission indicated the plaintiff was not being placed at risk. Furthermore, the defendant was not charged with altering bunk assignments, and the plaintiff even agrees that he did not ask her to put him in a lower bunk. *See* "Motion to Explain," at 2. In the absence of any specific directions from personnel with primary decision-making authority regarding bunk assignments, she placed the burden on the prisoner to come up with the necessary paperwork. The court cannot conclude that referring the plaintiff to the proper channels for resolving the matter of bunk assignment, rather than doing it herself, where there was no certainty, or even a strong suspicion, that the plaintiff was immediately threatened by his bunk assign-

ment, was reckless conduct. *See Puente v. Malone,* 2001 WL 1512543, *5 (N.D.Ill. 2001) (unpublished).

While the failure to personally consult with the medical department to confirm whether the plaintiff in fact suffered from the claimed maladies and should be moved may have been ill-advised, it was certainly not reckless. Moreover, there is no evidence that had she called the medical department someone would have told her to move the plaintiff to a lower bunk. The defendant was entitled to rely on the conclusion that the plaintiff would have obtained proper authorization for a lower bunk if his combination of conditions, which predated his arrival at the prison, presented an immediate, substantial threat to his health. Other courts have held similarly. For example, in *Oldham v. Chandler–Halford,* 877 F.Supp. 1340, 1355 (N.D.Iowa 1995), the plaintiff fractured his arm. The court determined that the defendants' reliance on the absence of any medical authorization for a lower bunk relieved them of reckless conduct. While the court believed good sense might have directed them to permit the plaintiff to have a lower bunk, the court also believed the defendants' conduct fell short of recklessness.

## IV. Conclusion

Based on the foregoing discussion, the defendant's actions do not rise to the level of recklessness required to succeed on a claim of deliberate indifference. This conclusion is premised on the absence of objective evidence to indicate he needed a lower bunk or was authorized for a lower bunk, the defendant's lack of authority regarding bunk assignments, and the fact that she told him what needed to be done to obtain a medically-necessary bunk assignment and directed him to the proper channels. Indeed, the plaintiff's own complaint charges her with negligence alone, although the court will not hold him to the actual significance of this representation.

The court concludes that the plaintiff has failed to offer sufficient proof of the alleged deliberate indifference towards his medical condition and the risk of harm posed by his assignment to a top bunk. Accordingly, the court **GRANTS** the defendant's motion for summary judgment.

The plaintiff is advised that he may appeal from this final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. Said written notice must be received by the clerk within thirty (30) days from the date of this order.

The Clerk is **REQUESTED** to send a copy of this Order and Opinion to the *pro se* plaintiff and counsel for the defendant.

It is so **ORDERED**.